**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 90-229E |
| | ) | |
| v. | ) | District Judge Susan Paradise Baxter |
| | ) | |
| ROBERT BRACE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the Court is a motion by Plaintiff, the United States of America (at times hereafter, the "Government") to exclude and strike certain exhibits that Defendants Robert Brace and Robert Brace Farms submitted in support of their Redrafted 60(b)(5) Motion to Vacate Consent Decree and to Deny Stipulated Penalties. ECF No. 289. After careful review of the parties' briefs and related filings, the Court finds the motion to be well taken. Accordingly, the Court will grant the Government's motion to strike for the reasons that follow.

## Background

The instant litigation concerns the Defendants' activities relative to a 30-acre parcel of property located in Waterford Township in Erie County, Pennsylvania. The subject 30-acre parcel, referred to herein as the "Murphy Site," is located within a larger 58-acre tract of land known as the "Murphy Farm," and has been designated by the United States as a statutorily protected wetlands area.

The United States initiated this civil action in 1990, seeking injunctive relief and civil penalties against Defendants based on the Defendants' drainage activities on the Murphy Site. The Government claimed that Defendants' drainage actvities resulted in unpermitted dredged or

1

fill material being discharged into waters of the United States, in violated Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. §1344.

United States District Judge Glenn Mencer initially ruled in favor of Defendants on the ground that their activities were exempt from the permitting requirements of Section 404; however, the U.S. Court of Appeals for the Third Circuit subsequently reversed the District Court's judgment and held that Defendants' activities relative to the Murphy Site had violated the CWA. *See U.S. v. Brace,* 41 F3d 117 (3d Cir. 1994). Thereafter, on September 23, 1996, the parties entered into a consent decree (the "Consent Decree") which, among other things, required Defendants to undertake certain remedial actions, including (1) removing drainage tiles that had been illegally installed in the wetlands, (2) filling certain surface drainage ditches that had been illegally excavated, and (3) installing a check dam in the creek running through the wetlands, with the goal of restoring the wetland hydrology that had previously been disturbed. *See* ECF No. 207-2.

On January 9, 2017, the United States initiated separate litigation (the "2017 Litigation") against Robert Brace, Robert Brace Farms, Inc. and Robert Brace and Sons, Inc. relative to the Defendants' similar conduct on an adjacent 20.01-acre parcel of land known as the "Marsh Site." As in the present case, the Government charged the Defendants in the 2017 Litigation with unlawfully clearing statutorily protected wetlands and, in the process, discharging pollutants into the waters of the United States in violation of the CWA. That case was assigned to the Honorable Barbara Rothstein, who has since presided over the litigation.

On the same day that the Government initiated the 2017 Litigation relative to the Marsh Site, the Government also filed in the within action a "Motion to Enforce Consent Decree and for Stipulated Penalties" ("Motion to Enforce") ECF No. 82. The United States claimed that

Defendants had "cleared, ditched, drained, plowed, and planted approximately eighteen (18) acres of wetlands [on the Murphy Site], causing the unpermitted discharge of pollutants into waters of the United States that were required to be restored pursuant to the Consent Decree, violating both the Consent Decree and the Clean Water Act." ECF No. 82 at 1.

Since that time, the parties (primarily Defendants) have sought and received numerous extensions of discovery relative to the arguments raised in the Government's Motion to Enforce. Because of these discovery extensions and the evolving contours of the evidentiary record, the Government's Motion to Enforce has undergone various iterations. See ECF Nos. 82, 206, 285. Along the way, Defendants have filed their own motion to vacate the Consent Decree and deny the stipulated penalties, as well as a Motion for Relief from Judgment Based on Extraordinary Circumstances. ECF No. 215, 220, 278.

Presently, the Government moves to exclude and strike seventeen (17) documents that Defendants submitted in support of their recently filed "Redrafted 60(b)(5) Motion to Vacate Consent Decree and to Deny Stipulated Penalties" (hereafter, "Redrafted 60(b)(5) Motion"), ECF No. 278. The Government argues that "without valid explanation or excuse," Defendants have proffered these exhibits after failing to disclose them in discovery. ECF No. 289 at 3.

Defendants responded to the pending motion with a sixty-page brief and thirty-one (31) appended exhibits that total over 1400 pages. ECF No. 294. On July 3, 2019, the Government filed its reply brief. ECF no. 299. As a result, the issues are sufficiently joined for adjudication.

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii), a party is required to disclose, even in the absence of a discovery request, copies "of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or

control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]"  In addition, a party must disclose "the identity of any witness it may use at trial" to present expert testimony.  Fed. R. Civ. P. 26(a)(2)(A).  If the witness is "retained or specially employed to provide expert testimony in the case," the disclosure "must be accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B).

"If a party fails to provide information or identify a witness as required by Rule 26(a) ... , the party is not allowed to use that information or witness to supply evidence on a motion ... unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The burden is on the non-producing party to prove substantial justification or that its failure to produce was harmless.  *Crouse v. Allegheny Cty.*, Case No. 2:09cv1221, 2016 WL 6086066, at *3 (W.D. Pa. Jan. 25, 2016); *U.S. Fire Ins. Co. v. Omnova Solutions, Inc.,* No. 10–1085, 2012 WL 5288783, at *2 (W.D. Pa. Oct. 23, 2012).

"In addition to or instead of this sanction [of excluding evidence]," the court "(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(iv).  Fed. R. Civ. P. 37(c)(1).  When considering whether to exclude evidence relating to an untimely or otherwise improper disclosure, the Third Circuit has directed courts to weigh the following "*Pennypack* factors":

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, (4) the presence of bad faith or willfulness on the part of the non-disclosing party, and (5) the importance of the excluded testimony.

*Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997); *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*

by *Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir. 1985). In evaluating these factors, we are mindful that "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Meyers,* 559 F.2d at 905.

## Discussion

### A. <u>Expert Report of Dr. Susan Kagel</u>

The Government first moves to strike and exclude the February 11, 2019 "Wetlands Rebuttal Report" of Dr. Susan Kagel, a professed "Wetlands, Wildlife and Permitting Specialist." ECF No. 279-199. As set forth in Dr. Kagel's Report (hereafter, "Kagel Report"), Kagel Environmental, LLC ("KE") was initially retained by Defendants "to examine and rebut the Government expert opinions concerning the wetland status" of the adjacent Marsh [Site]. Id. at 10. "While inspecting the Marsh [Site]," in late April-early May 2018, "KE had opportunity to also visit the Murphy [Site] and examine the now defunct drainage ditches and, in particular, the extensive beaver dam system that extends both on and off the Consent Decree Area (CDA) within the Murphy [Site]." Id. At some point thereafter, Defendants engaged KE "to perform a forensic analysis of the 1989-1990 EPA wetland evaluation of the Murphy [Site] . . . for purposes of responding to the Government consent decree enforcement action" in this case. Id.

In her February 11, 2019 report, Dr. Kagel offers the following key opinions:

a. "Normal circumstances" on the Murphy [Site] as of 1984-1985 were farmable, non-wetland.

b. Prior to implementation of the Consent Decree, normal hydrological status for the Murphy [Site] was non-wetland.

c. Wetlands Have Appeared as the Result of the Consent Decree, both on and [o]ff of the Murphy [Site] Where None Existed Before.

d. Changes in Government Oversight of Beaver Management Removed Brace's Ability to Maintain His Farm Ground.

e. The Government's 1989-1990 Wetland Delineation on the Murphy Site Was Flawed and Biased.

f. The Governments [sic] Wetland Restoration Plan was Seriously Flawed.

Id. at 10-13. Dr. Kagel concludes that:

> Mr. Brace was a victim of agency incompetence, a lack of science application and severe bias in what should have been objective studies. Finally, he was involuntarily left with a confusing "restoration plan" that had no defined boundaries, no workable management plan, and an indeterminate end goal."

Id at 68.

The Government objects that the Kagel Report is an entirely new expert report that: was not disclosed under Rule 26(a)(2), opines on issues that have already been conclusively decided, and/or offers expert opinion on issues that are not susceptible to scientific or technical analysis. Defendants counter that an evaluation of the *Pennypack* factors favors their use of the report.

*(i)     No Substantial Justification for Nondisclosure*

As an initial matter, the Court finds there is no substantial justification for Defendants' failure to disclose the Kagel Report. "Substantial justification exists if there is a genuine dispute about whether the party was required to make the disclosure." *Kacian v. Brennan*, No. 3:12-cv-102, 2017 WL 933142, at *3 (W.D. Pa. Mar. 8, 2017) (citing *Claude Worthington Benedum Found. v. Harley*, No. 12-cv-1386, 2014 WL 3614237, at *3 (W.D. Pa. July 22, 2014)); *see Tolerico v. Home Deppot*, 205 F.R.D. 169, 176 (M.D. Pa. 2002). Here, there is no genuine dispute about the fact that Dr. Kagel's report was subject to the disclosure requirements of Rule 26(a)(2). Under subsection (A) of the rule, Defendants were required to disclose the identity of witness that they "may" call for the purpose of presenting expert testimony. Fed. R. Civ. P. 26(a)(2)(A). Under subsection (B), Defendants were required to disclose Dr. Kagel's written

report, as she was "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). The Defendants' duty to disclose in this regard was ongoing. Fed. R. Civ. P 26(e), and Defendants do not appear to contend otherwise. Despite this obligation, the Government was never served with the Kagel Report until February 21, 2019, when Defendants filed their Redrafted 60(b)(5) Motion and appended the report as one of their 230 supporting exhibits. ECF No. 279-199. As the Court specifically reminded defense counsel *just days before* the Defendants filed their Redrafted 60(b)(5) Motion, merely attaching exhbits to a brief does not constitute "disclosure." ECF No. 283 at 16:13-19. Defendants have offered no substantial justification for their failure to comply with the disclosure requirements of Rule 26(a) and (e). *See Kacian*, 2017 WL 933142, at *3; *Tolerico*, 205 F.R.D. at 176.

   *(ii)    Failure to Disclose Was Not "Harmless"*

   The Court also finds that Defendants' failure to comply with their Rule 26 obligations was not harmless. A failure to disclose evidence is harmless "if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Smith v. Allstate Ins. Co*., 912 F. Supp. 2d 242, 249 (W.D. Pa. 2012) (internal quotation marks and citation omitted); *see also Kacian,* 2017 WL 933142, at *3. Here, Defendants suggest that the Government had sufficient knowledge of the content of Kagel Report in that "much of the information"contained in the Report was produced in connection with the 2017 Litigation. See ECF No. 294 at 43-46. In particular, Defendants point to: (a) two reports that Dr. Kagel issued in connection with the 2017 Litigation that opine on the wetland status of the adjacent Marsh Site; (b) various pleadings in the 2017 Litigation wherein Defendants discuss the Murphy Site wetlands evaluation; and (c) numerous aerial photographs of the Brace properties that are referenced in the Kagel Report and were previously produced by one side or the other in the

2017 Litigation.  Based upon these various points of reference, Defendants insist that the Government cannot "feign" surprise (i.e., it should have anticipated) that Dr. Kagel would proffer an expert opinion in *this* litigation challenging the EPA's designation of the Murphy site as a protected wetlands area.

The Court finds this argument unpersuasive.  Although the 2017 Litigation concerns an adjacent tract of land and involves similar claims of unlawful CWA violations, the two cases have, at all times, been in materially different procedural postures.  While the status of the Marsh Site as a protected wetlands area was initially an open question in the 2017 Litigation, that issue was long ago decided relative to the Murphy Site.  *See United States v. Brace,* 41 F.3d 117, 123 (3d Cir. 1994) (noting that the parties had stipulated that the Murphy Site constituted protected wetlands at the time of Defendants' challenged activities and the District Court had determined that the area involved waters of the United States).  Based on the Court of Appeals' ruling that Defendants were in violation of the Clean Water Act, the parties entered into the subject Consent Decree – a circumstance that materially distinguishes this case from the 2017 Litigation.

Given these significant differences, it has been made abundantly clear to the parties that the 2017 Litgation and the instant case are not interrelated from a case-management perspective; consequently, production of expert discovery in one case does not satisfy or excuse a party's disclosure obligations in the other.  That the two cases would proceed independently on their own respective case management tracks was made clear at this Court's May 15, 2018 motion hearing, wherein the undersigned extended the period for expert discovery in this civil action but expressly advised defense counsel that he would have to file a motion in the 2017 Litigation in order to request a similar extension from Judge Rothstein.  ECF No. 231 at 33:11-24.  The point was further driven home when both Judge Rothstein and the undersigned denied motions to

consolidate the two actions. *See* ECF No. 261 (denying Defendants' Motion to consolidated Cases, "as the undersigned concurs with the well-reasoned opinion of District Judge Barbara J. Rothstein in 1:17-cv-06"). In fact, in the same order in which the Court denied Defendants' motion to consolidate, it also directed the Clerk of Court to remove the "Related" designation from this case "as 1:90-cv-229 and 1:17-cv-06 do not satisfy the definition of 'related actions' under Local Rule 40(D)(2)." *Id.* The Court also takes judicial notice of Judge Rothstein's July 31, 2018 Order granting partial judgment on the pleadings in the 2017 Litigation. *See United States of America v. Robert Brace, et al.,* No. 1:17-cv-6 (W.D. Pa. July 31, 2018) (Order Granting Pl.'s Mot. for Part. Judg. on the Pleadings, ECF No. 75, at 7). In that Order, Judge Rothstein specifically ruled that documents produced in the instant civil action were not properly considered part of the record in the 2017 Litgation. *See id.* at 7; *see also United States v. Brace*, No. 1:17-CV-00006 (BR), 2019 WL 5101956, at *2 (W.D. Pa. Apr. 18, 2019) (court noting that it had "stressed time and again the separateness of the two actions) (citations to the record omitted). Other courts have similarly held that "required disclosures may not be avoided because the opposing party may be possessed of the information subject to such required disclosures." *Metzgar v. U.A. Plumbers & Steamfitters Local No. 22 Pension Fund*, 13-CV-85V(F), 2017 WL 168000, at *1 (W.D.N.Y. Jan. 17, 2017); *see also Rigby v. Philip Morris USA Inc.*, 717 F. App'x 834, 835–36 (11th Cir. 2017) (defendants' knowledge of witnesses from prior dealings did not excuse plaintiffs' failure to disclose because "Defendants did not know that Plaintiffs intended to use information they possessed"); *Martino v. Kiewit New Mexico Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015) ("[E]ven if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses"). As a result, it should have been clear to the

Defendants that their production of expert discovery in the 2017 Litigation did not satisfy their disclosure obligations in this case.

Defendants assert that they made adequate disclosure by virtue of a July 27, 2018 email in which defense counsel stated that Defendants were "designating" Dr. Kagel as an expert in this case. See ECF No. 294-15. But Rule 26(a)(2)(B) is crystal clear that disclosure of an expert witness must be accompanied by a written report. Because Defendants did not produce Dr. Kagel's report in a timely fashion, the Government was justified in concluding that she would not be called upon to render an expert evaluation in this case. That is especially true given the fact that the Kagel Report addresses an issue that was long ago resolved in the earlier stages of this litigation. For all of these reasons, the United States did not have "sufficient knowledge" of the substance of the Kagel Report for purposes of establishing harmlessness.

Nor is the Court persuaded that Defendants' nondisclosure was the result of an "honest mistake." Citing a series of orders issued during the time period October 24, 2018 through February 15, 2019, Defendants maintain that they sincerely interpreted the Court's orders as extending the deadline for discovery up until the time that they submitted their Redrafted Rule 60(b)(5) motion, thereby allowing them to incorporate into their redrafted motion any new exhibits that might support their requested relief. Defendants explain that these Orders were issued "in the context of this Court's ongoing calls for the parties to provide it with as much new relevant information as possible to enable it to make the 'right' decision . . . , and the Court's expressed need to provide Mr. Brace with an opportunity to develop an adequate defense in this action." ECF No. 294 at 52.

Defendants are correct that this Court has repeatedly expressed its intention to give them every benefit of a fair and liberal discovery process. To that end, the Court has granted no less

than four extensions of discovery which, all told, has spanned a period of approximately fifteen (15) months, finally ending in mid-September 2018. See ECF Nos. 146, 193, 203, 230, 257. In addition to a generous period of discovery, this Court also granted Defendants an extension of time relative to the filing of their Redrafted 60(b)(5) motion, see ECF No. 263, and allowed them to exceed the Court's already generous page limitation. ECF Nos. 277.

Notwithstanding these measures, however, the Court did _not_ grant Defendants leave to file an entirely new expert report with their Redrafted 60(b)(5) Motion in derogation of their Rule 26 disclosure obligations. On the contrary, the orders that Defendants cite relative to the Court's various extensions of discovery were all issued within the context of Defendants' court-approved efforts to mount a scientific expert defense by retaining *a hydraulic engineer* who could opine on the hydrological/hydraulic characteristics of the Murphy Site. See, e.g., ECF Nos. 208, 230, 237, 257, 263, 268, 277. To the extent the Court referenced the possible allowance of any *additional* discovery beyond the mid-September 2018 cut-off date, it was limited to the *Government's* possible need for additional discovery in order to depose and/or rebut the Defendants' hydraulic engineering expert. See ECF No. 260 at 28, 39, 45; ECF No. 263; ECF No. 268; ECF No. 289-1 at 9.[1]

Defendants' brief suggests that their professed misinterpretation of the discovery deadline is predicated, in part, on the Court's various briefing orders, wherein the Court typically directed the parties to file their respective motions, along with "any supporting briefs and exhibits," by a certain date. See, e.g., ECF Nos. 263, 268. But it strains credulity to believe that this type of *pro forma* language would be interpreted as an invitation to submit an *entirely new* expert report that was never previously served upon the Government.

---

[1] At another point in time, the Court indicated that it might permit the Government to re-depose Mr. Brace's sons relative to affidavits that Defendants first produced after the close of discovery. ECF No. 289-1 at 10-13.

Defendants' professed misunderstanding is all the more untenable when viewed in the context of the Court's February 15, 2019 status conference. During this proceeding, counsel for the Government raised concerns about Defendants' past utilization of undisclosed exhibits in connection with their prior motions practice. ECF No. 289-1 at 10:4-11:5, 13:22-14:14. The Court specifically reminded defense counsel of the "requirement . . . of continuing disclosure under the Rules of Discovery," and defense counsel acknowledged same. Id. at 14:15-25. The Court further noted, with respect to published articles, that the mere availability of these documents on the internet did not constitute disclosure, and "If you're going to use them, you have to give it to [the Government' attorneys]." Id. at 15:9-16. The Court also reminded counsel that merely appending exhibits to a brief is not disclosure within the meaning of Rule 26. See id. at 16:17-19 ("That's the point of discovery; so that when you get a brief, [the brief] doesn't hit you with it for the first time."). Despite these admonitions, Defendants said nothing about the fact that they were then in possession of (or in the process of imminently acquiring) Dr. Kagel's report, which she had signed just four days earlier.

To the extent that there was any ambiguity whatsoever about the Defendants' duty to timely disclose the Kagel Report, they had ample opportunity to raise the issue with the Court. It is clear from the report that Dr. Kagel was retained relative to the Murphy Site at some point after inspecting the area in late April - early May 2018. ECF No. 279-199 at 10. During the time period from May 2018 through February 21, 2019, when Defendants filed their Redrafted 60(b)(5) Motion, the Court had several conferences with the parties and repeated discussions about the Defendants' efforts to obtain a hydraulic engineering report; yet at no time to this Court's recollection did Defendants request an extension of expert discovery for purposes of producing a wetlands specialist's report.

In light of the foregoing circumstances, the Court finds that Defendants lacked any rational basis to believe that they had leave of Court to submit an entirely new, belated, and previously undisclosed expert report with their Redrafted 60(b)(5) Motion. Consequently, the Court is not persuaded that Defendants' failure to time serve Dr. Kagel's report was the result of an "honest mistake."

Given that Defendants' discovery violation was neither "substantially justified" nor "harmless," Rule 37(c)(1) precludes Defendants from utilizing the Kagel Report in connection with their Redrafted 60(b)(5) Motion, unless the *Pennypack* factors weigh in favor of a less draconian sanction. Based on the following analysis, the Court finds they do not.

### (iii) *Prejudice or Surprise*

The first *Pennypack* factor consider the degree to which the party seeking exclusion has been surprised and prejudiced. As noted, Defendants insist that the United States cannot "feign" surprise or prejudice because "much of the information" contained in the Kagel Report was produced in connection with Defendants' filings in the 2017 Litigation. See ECF No. 294 at 43-46. For the reasons previously discussed, the Court finds that the Government was both surprised and prejudiced by Defendants' inclusion of the Kagel Report in their Redrafted 60(b)(5) Motion. Simply stated, Defendants' litigation practices relative to the 2017 Litigation did not provide adequate notice of their intention to rely on Dr. Kagel's expert opinions in this action. The two cases involve different tracts of land and materially different procedural histories. In this case – unlike the 2017 Litigation, the question of whether the subject area contains "wetlands" was long ago determined, and the issue now at hand is whether the judicially-approved Consent Decree governing those protected wetlands was violated and/or should no longer be prospectively enforced. Defendants' introduction of an entirely new factual

challenge to the Government's case through the use of a previously undisclosed expert constitutes grounds for surprise and prejudice.

(iv)     *Inability to Cure the Prejudice/Disruption of Orderly and Efficient Proceedings*

The foregoing discussion informs this Court's analysis relative to the second and third *Pennypack* factors. Were the Court to permit Defendants' use of the Kagel Report, the Government would essentially be forced to relitigate the original 1990 enforcement action anew – including the foundational issue of whether the Murphy Site contains statutorily protected wetlands subject to the CWA's permitting requirements. At this point, the parties' dispute relative to Defendants' unpermitted activities on the Murphy Site date back some thirty years. The most recent aspect of this litigation – the Government's attempts to enforce the Consent Decree and enjoin perceived violations thereof – has been pending for more than three years. Discovery related to the Government's enforcement action was originally scheduled to conclude in November 2017 but was eventually extended to mid-September 2018 in order to accommodate the Defendants' desire to proffer a scientific, merits-based defense. We are now more than a year past the close of expert discovery. The docket will speak for itself in terms of the number and length of proceedings that this Court entertained en route to the current procedural juncture where (the Court believed) discovery on behalf of the Defendants had finally concluded.

If Defendants are now permitted to relitigate whether the Murphy Site was properly designated as a protected wetlands area during the time period predating the Consent Decree, the United States will be required to revisit the discovery undertaken more than two decades ago. This would likely involve the Government procuring new expert analysis to re-establish a fact to

which the Defendants stipulated in 1993.  Such a time-consuming and expensive process would unfairly prejudice the Government and interfere with the Court's ability to bring these proceedings to an orderly and efficient resolution.  These considerations strongly weigh against allowing the use of the challenged report.

### (v)    *Bad Faith and/or Willfulness*

The fourth *Pennypack* factor requires the Court to consider whether the nondisclosing party exhibited bad faith or willfullness.  Here, the sequence of events suggests a deliberate attempt by Defendants to surreptitiously expand the scope of permissible expert discovery (without leave of Court) by belatedly appending a lengthy, complex, and previously undisclosed expert report to their Redrafted 60(b)(5) motion.

As discussed, Defendants reportedly retained Dr. Kagel in January 2018 in connection with the 2017 Litigation for the purpose of rebutting the Government's designation of the adjacent Marsh Site as a protected wetlands area.  ECF No. 279-199 at 10.  To that end, Dr. Kagel generated reports for use in the 2017 Litigation on February 21, 2018.  Id.  After conducting a follow-up field investigation of the Marsh Site from April 29 through May 1, 2018, Dr. Kagel issued a second report for use in the 2017 Litigation on June 1, 2018.  "While inspecting the Marsh tract, KE had opportunity to also visit the Murphy [Site] and examine the now defunct drainage ditches and, in particular, the extensive beaver dam system that extends both on and off of the Conset Decree Area (CDA) within the Murphy [Site]."  Id.  "Thereafter, [defense counsel] engaged KE, again," in part to perform "a forensic analysis of the 1989-1990 EPA wetland evaluation of the Murphy [Site]."  Id.

During this same general time period, Defendants had obtained an extension of expert discovery for the express purpose of retaining a hydraulic engineer.  To this Court's

understanding, Defendants intended to utilize this expert to address alleged flooding at the Consent Decree Site and opine on whether such flooding had been caused by certain restorative measures that were required under the terms of the Consent Decree. Between May 2018 and February 2019, the Court held three separate telephonic proceedings and entertained the Defendants' motion to extend expert discovery. ECF Nos. 231, 237, 260, 283. At no point during this time frame, to the Court's recollection, did Defendants reference their intention to rely on Dr. Kagel for the purpose of proffering a wetlands evaluation of the Murphy Site. Further, it bears repeating that the Court expressly reminded defense counsel, during the February 15, 2019 telephonic conference of his ongoing duties of disclosure and the fact that those obligations could not be satisfied merely by attaching undisclosed exhibits to a court filing. ECF No. 283 at 15:22-25; id. at 16:9-16; id. at 17:12-19. Though defense counsel was presumably in possession of, or soon to acquire, Dr. Kagel's report, he made no mention of it during the February 15 proceeding and instead chose to disclose it for the first time six days later, when the report was appended as one of 230 exhibits proffered in support of Defendants' Redrafted 60(b)(5) Motion.

Under these circumstances, the Court finds that Defendants' failure to disclose the Kagel Report constituted a willful disregard of both this Court's case management orders and the disclosure requirements of Rule 26. This factor weighs in favor of exclusion.

(vi)     *Importance of the Excluded Testimony*

The fifth *Pennypack* factor concerns the importance of the excluded testimony. Here, Defendants intend to use the Kagel Report to challenge the Government's jurisdiction relative to its enforcement measures at the Murphy Site. But the importance of the report to Defendants'

case is materially diminished by the fact that it is largely inadmissible on grounds unrelated to Defendants' Rule 26(a) violation.

First, Defendants are collaterally estopped from utilizing the Kagel Report in the manner they intend. The doctrine of collateral estoppel (or issue preclusion) applies in federal cases where: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) there was a valid and final judgment; and (4) the determination was essential to the prior judgment. *See Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002); *In re Kaplan,* 608 B.R. 443, 449 (Bankr. E.D. Pa. 2019). The doctrine applies to both issues of law and fact, *Nat'l R.R. Passenger Corp.,* 288 F.3d at 525 (citing Restatement (Second) of Judgments § 27 (1980)), including those decided as part of an earlier judgment in the same proceeding. *See Toscano v. Connecticut Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) ("Judicially approved settlement agreements are considered final judgments on the merits for the purposes of claim preclusion."*); Coca-Cola Bottling Co. of Elizabethtown v. Coca-Cola Co.,* 654 F. Supp. 1419, 1431 (D.Del. 1987) (noting that "a party to a consent decree would be barred by res judicata from bringing a new claim arising from the transaction covered by the consent decree"), *aff'd,* 988 F.2d 386 (3d Cir. 1993); *In re Grasso*, 562 B.R. 877, 884-85 (E.D. Pa. 2016) (explaining that issue preclusion applies to matters that have become the subject of a final, appealable order).

In this case, Dr. Kagel's central opinion purports to challenge an issue that was long-ago stipulated to by Defendants – namely, that the Murphy Site contains "wetlands" and, thus, "waters of the United States" that are subject to the protections of the CWA. See ECF 169-5. Based on the parties' stipulation, the District Court found that the Murphy Site was a CWA wetland. See ECF No. 169-6 at Conclusion of Law ¶4. This determination was accepted and

confirmed by the U.S. Court of Appeals for the Third Circuit when it ruled that Defendants were liable for violating the CWA. Specifically, the Court of Appeals concluded that the United States had established the five elements of a prima facie section 404 violation, a necessary element of which was that the Murphy Site contained wetlands at the time of the challenged discharges. *See Brace*, 41 F.3d 117, 120-23 (3d Cir. 1994). Consequently, Defendants are now precluded from attempting to relitigate this issue. *See Kairys v. I.N.S.*, 981 F.2d 931, 941 (7th Cir.1992) (collateral estoppel applies to factual determinations made by judge or jury in a case that is actually litigated, even "where the determinations rest in part on admissions or stipulations.") (citing 1B James William Moore, Jo Desha Lucas & Thomas S. Currier, Moore's Federal Practice ¶ 0.444[4], at p. 817 (1992)).

Second, certain aspects of the Kagel Report run afoul of the dictates of Rule 702 of the Federal Rules of Evidence and are therefore inadmissible on that basis as well. Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As the Goverment points out, Dr. Kagel purports to opine on certain matters that are not properly admissible under Rule 702. She states, for example, that an employee of the U.S Fish and Wildlife Services ("FWS") "made unsupported and untrue allegations concerning Mr. Braces [sic] activities in an attempt to disqualify the defendant from receiving a legal, valid

Commenced Conversion designation on the Murphy Tract and the adjacent Marsh Site," ECF No. 279-199 at 65, thus opining on the mental state and motivations of a federal employee. Elsewhere, Dr. Kagel purports to opine on legal matters such as the scope of the EPA's discretion, see id. at 64 (opining that "FSW intervened where it had no jurisdiction or appropriate expertise"). These types of non-scientific and/or non-technical matters are not the proper subject of expert testimony.

Finally, Defendants are not completely hampered in their ability to present a scientific, merits-based defense because the Court allowed them extra time to retain a hydraulic engineer. This individual will offer opinions concerning the hydraulic/hydrologic features of the Murphy Site insofar as they relate to the terms of the Consent Decree. Defendants will be able to utilize their engineering expert in furtherance of their motion to obtain prospective relief from the Consent Decree.

*(vii)* *Summary*

Based upon the foregoing considerations, the Court finds that the balance of *Pennypack* factors weighs strongly in favor of exclusion. Accordingly, the Government's motion to strike will be granted relative to the Kagel Report.

B. <u>Scientific Articles Set Forth in Exhibits 129, 130, 131, 156, 209, 210, and 224</u>

The Government also moves to exclude and strike seven documents that were submitted in support of Defendants' Redrafted 60(b)(5) Motion as Exhibits 129, 130, 131, 156, 209, 210, and 224. The challenged exhibits, consisting of scientific articles, were not produced to the Government during discovery in this civil action. Five of the exhibits (Nos. 130, 131, 156, 209, and 224) were not relied upon by the Defendants' experts in their respective reports;

consequently, the Government argues, the articles in question constitute inadmissible hearsay. The remaining two exhibits (Nos. 129 and 210) *were* cited by Dr. Kagel in her expert report, but since the Government argues for the exclusion of Dr. Kagel's report, it reasons that Exhibits 129 and 210 must be excluded as well.

Defendants argue that the documents were "adequately disclosed" during the course of the 2017 Litigation or in connection with the Kagel Report. ECF No. 294 at 24. Further, Defendants maintain that the articles are relevant to this case in that they: (1) "discuss how beaver dams contribute to the wetland characteristics of a site or area"; (2) expose how farmers, like Brace, within certain geographic locations are already subject to certain federal and state regulations; and (3) reveal an admission by a U.S. Army Corps of Engineers Branch Chief that the Corp had "'generally enforced 404 permits only on the coast' rather than at inland locations." ECF No. 294 at 24. Defendants further maintain that these articles corroborate the findings of their hydraulic/hydrologic engineer and of Dr. Kagel. Id.

Having reviewed the parties' respective filings, the Court finds that the Government's argument for exclusion is well-taken. Here again, there is no genuine dispute concerning the Defendants' ongoing obligations to disclose these documents pursuant to Rule 26(a) and 26(e). Each of the challenged exhibits is a "document" within Defendants' "possession, custody, or control" that is now being used "to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Defendants had an ongoing obligation to produce these documents even in the absence of a discovery request from the Government, yet they apparently failed to do so. Defendants lack any substantial justification for failing to adhere to the disclosure requirements of Rule 26.

Moreover, their failure to disclose was not "harmless." The Government did not have sufficient knowledge of the articles for purposes of this civil action, notwithstanding the fact that the articles may have been published, produced in separate litigation, or generally available on the internet. "[E]ven if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses." Martino v. Kiewit N.M. Corp., 600 F. App'x 908, 911 (5th Cir. 2015). The Defendants have failed to persuade the Court that their conduct was the result of an "honest mistake." Defendants were previously advised by Judge Rothstein that documents produced in one civil action would not thereby be considered part of the record in another. *See United States of America v. Robert Brace, et al.,* No. 1:17-cv-6 (W.D. Pa. July 31, 2018) (Order Granting Pl.'s Mot. for Part. Judg. on the Pleadings, ECF No. 75, at 7). And, as this Court expressly discussed with counsel on February 15, 2019, a party cannot satisfy its discovery obligations merely by appending a document to a brief. ECF No. 283 at 17:13-19. The Court also expressly reiterated that the mere availability of an article on the internet is *not* satisfactory disclosure. Id. at 16:9-17. Accordingly, the Court finds that the Defendants' failure to produce the challenged articles during the lengthy discovery in this case constituted a willful disregard of their discovery obligation, rather than mere honest mistake.

Turning to the remaining *Pennypack* factors, the Court finds that Defendants' use of the challenged articles would result in unfair prejudice and surprise to the Government. In effect, Defendants' use of these undisclosed articles amounts to reliance on scientific opinions without the Government having the benefit of expert discovery. If Defendants are permitted to utilize the challenged scientific articles, the Government would be penalized by not having had an opportunity to cross-examine the authors. As a result, the United States would be unable to

sufficiently explore the experts' methodologies and analysis. The Court would be asked to consider these articles without the benefit of placing them in proper context and/or fully understanding their applicability (or non-applicability) to the instant case. The prejudice would be impractical, if not impossible to cure, given the vast amounts of time and money that have already been expended during the lengthy period of fact and expert discovery in this case. For these reasons, the Defendants' use of the undisclosed articles would disrupt the orderly and efficient resolution of this case.

Finally, the importance of the disputed exhibits is again dimished by their lack of admissibility. Under the Federal Rules of Evidence, a party may rely on a statement contained in a treatise, periodical, or pamphlet if:

> (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and

> (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.

Fed. R. Evid. 803(18). Given the Court's decision to exclude the Kagel Report, none of the challenged scientific articles satisfy the criterion for admissibility under Rule 803(18).

In view of the foregoing considerations, the Court concludes that exclusion of Exhibits 129, 130, 131, 156, 209, 210, and 224 is appropriate. Consequently, the Government's motion will be granted as to these exhibits.

C. Briefs and Expert Reports Served and Filed in Case No. 1:17-cv-006

Finally, the United States objects to the Defendants' use of nine exhibits (Exhibits 19, 106, 107, 111, 112, 113, 114, 115, and 116) consisting of documents that were part of the record in the 2017 litigation. These include: the Government's expert and rebuttal expert reports concerning ecological and wetlands evaluations of the adjacent Marsh Site (Exs. 19, 106, and

107); Defendants' motions to exclude or limit the testimony of these experts (Exs. 11, 112, 113 and 114); and Defendants' responsive statement of facts and memorandum of law relative to summary judgment proceedings in the 2017 Litigation (Exs. 115 and 116).

The Government contends that these documents were never properly served during discovery in the instant litigation. It further objects that the documents involve matters pertinent to the adjacent Marsh Site and, as such, are irrelevant to these proceedings.

Defendants counter that the Government was sufficiently aware of the subject matter in these documents because of their filing and/or production in the 2017 Litigation. Defendants further argue that the Marsh and Murphy Sites are hydrologically linked and, therefore, the information contained in the challenged documents is materially relevant to the matters at issue in this civil action.

After careful review of the challenged exhibits and the parties' respective arguments, the Court agrees that the documents in question should be excluded. As discussed, "required disclosures may not be avoided because the opposing party may be possessed of information subject to such required disclosures." *Metzgar*, 2017 WL 168000, at *1. The within case and the 2017 Litigation are not consolidated actions; at all times, they have involved procedurally distinct inquiries relative to two adjacent, but separate tracts of land. Accordingly, the Government's acquisition of the subject documents in connection with the 2017 Litigation did not technically excuse Defendants from disclosing their intention to use those same documents as exhibits in this case.

More fundamentally, however, the Court is not persuaded that the subject exhibits are materially relevant to these proceedings. All of the challenged exhibits pertain to the question whether the Government properly found existing wetlands on the Marsh Site – an issue that

Judge Rothstein resolved adversely to Defendants when she entered summary judgment in favor of the Government on August 12, 2019. *United States v. Brace*, No. 1:17-CV-00006 (BR), 2019 WL 3778394 (W.D. Pa. Aug. 12, 2019). In essence, Defendants seek to indirectly attack the Government's 1989-1990 delineation of the Murphy Site wetlands by incorporating material from the 2017 Litigation that was used to attack the wetlands determination of the adjacent Marsh Site. But the presence of wetlands has been decided both in this case and, more recently, in the 2017 Litigation. As a result, that issue is not presently before the Court. Questions about the Government's method of designating wetlands on the Marsh Site are irrelevant to whether Defendants violated the Consent Decree on the Murphy Site or whether prospective enforcement of Consent Decree would be inequitable.

In light of these circumstances, the Court finds that the inclusion of the 2017 Litigation reports and filings would unnecessarily convolute and expand these already protracted proceedings. To the extent these documents possess any probative value whatsoever, it is substantially outweighed by the unfair prejudice and confusion that would arise from injecting into this case matters that were at issue in the 2017 Litigation. Accordingly, the motion to strike will be granted relative to the reports and court filings that were part of the record in the 2017 Litigation.

## Conclusion

Up to this point, the Court has been overtly generous to the Defendants out of an abundance of caution and a desire to ensure that Mr. Brace has a fair opportunity to present his case. At some point, however, the Court's generosity must give way to its need to bring the discovery process to an orderly end. For the reasons discussed herein, the Government's motion to strike the aforementioned exhibits will be granted.

An appropriate order follows.

SUSAN PARADISE BAXTER
United States District Judge