IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No.  1:90-cv-00229 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT BRACE, ROBERT BRACE | ) | |
| FARMS, INC. | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF REDRAFTED RULE 60(b)(5)
MOTION TO VACATE CONSENT DECREE**

**INTRODUCTION**

In their initial brief in support of vacating the Consent Decree (ECF No. 314), Defendants explained in extensive detail the several significant reasons for vacating the consent decree.  In short:  First, the Consent Decree and accompanying wetland restoration plan are latently ambiguous, an issue which has caused significant issues between the parties—e.g., the Government expressly authorizing the Braces to conduct the activities at issue—culminating in this enforcement action.  Second, significant, unforeseen factual circumstances have rendered continuing enforcement of the Consent Decree unworkable for the parties—namely, flooding, beaver dams, and administrative delays.  Third, significant changes in legal circumstances have likewise rendered continuing enforcement of the Consent Decree unworkable inequitable.  Combined, these issues have created a situation where the Government expressly authorized the actions at issue, then reversed course and brought this enforcement action (along with the accompanying Marsh site enforcement action), despite Defendants reasonable reliance on the assertions of the Government's representatives.  The reasons warranting vacatur of the Consent Decree have been explained in detail not just in Defendants' brief in support of its Rule 60(b)(5)

motion, but also in Defendants' brief in response to the Government's Motion to Enforce.  As to many of the points and arguments made by the Government in its response, Defendants respectfully direct the Court directly at Defendants' underlying brief and other filings, which will show that the Government's positions are generally wrong, irrelevant, or based on disputed facts. Defendants will not repeat and belabor the points already made by Defendants in those filings; instead, Defendants will focus in this reply brief on important and new arguments raised by the Government in its responsive brief.

For all the reasons set forth in Defendants' motion, brief, opposition to motion to enforce, and this reply brief, Defendants' respectfully request that the Court vacate the Consent Decree and deny the Government's request for stipulated penalties.

ARGUMENT

### A. Defendants' Motion is Not Untimely.

One of the Government's primary argument is that Defendants' motion to vacate the Consent Decree is not timely because it was not filed until 22 years after the Consent Decree was entered.  The Government's argument misses the mark by ignoring the history of this issue and the ongoing discussions and relations between the parties.  In the 2006 Court of Claims proceeding, Jeffrey Lapp testified on behalf of the Government that the purpose of the Consent Decree was to return to that which existed in 1984, and that if the Consent Decree was resulting in conditions that were not consistent with the 1984 conditions (e.g, flooding and erosion of upland portions), then the Defendants could contact the EPA, and it would work with them to ensure that the Consent Decree was appropriately implemented to achieve only its desired condition—i.e., the condition that existed in 1984.  *See* ECF No. 317 at 6-7.  The Defendants did just that—based on the ongoing flooding and erosion—and tried to work with the EPA to resolve the issue.  *Id*. at 10-11. Then, critically, in 2012, Army Corps representative Michael Fodse and

2

EPA representative Todd Lutte expressly authorized the Defendants to take the actions at issue in this case.  *See* ECF No. 317 at 12-16.  Defendants then undertook the actions at issue, only to be later told that they were violating the Consent Decree.  *Id.* at 14-15.  Defendants thereafter worked with the EPA to resolve these issues; those efforts were unsuccessful, and the Government filed this action on January 9, 2017.  As a result, there was no need to vacate or amend the Consent Decree until the Government authorized the conduct at issue, reversed course, and then instituted these enforcement proceedings.  All throughout this period, the Defendants were led to believe there was no need to amend or vacate the Consent Decree; the actions of the Government should not now preclude Defendants from filing this action.

The Government's untimeliness argument is therefore wrong for several reasons:  First, the relevant basis for starting the clock is not the entry of the Consent Decree, but rather the Government's about-face on the authorization of the conduct at issue and subsequent refusal to compromise on enforcement of the Consent Decree.  These actions occurred in the years immediately preceding the initiation of this action, and thus are well within the time periods cited by the Government.  Second, as the Government acknowledges, "extraordinary circumstances" can warrant filing within an extended time period.  The case here certainly represents such "extraordinary circumstances," given the Government's authorization, reversal, and subsequent discussions by the parties.  Otherwise Defendants are being *penalized* for seeking out EPA for consultation, relying on EPA authorizations, and then attempting to work with the EPA for resolution of such issues.  These factors are absent from all of the cases cited by the Government.

For all these reasons, Defendants' motion is timely and the Court should proceed to rule on its merits.

B. **The Consent Decree is Ambiguous.**

As explained in detail in Defendants' initial brief, the Consent Decree is ambiguous for a variety of reasons. *See* ECF 314 at 1-60. Most importantly, the Consent Decree—and attached map—are ambiguous, as acknowledged by even the Government's own representatives. As explained repeatedly in this case, Army Corps representative Michael Fodse and EPA representative Todd Lutte expressly authorized the Defendants to take the actions at issue in this case. One potential cause of Lutte and Fodse's false authorization appears to be confusion regarding the precise area covered by the Consent Decree, given the unclear and ambiguous map attached to the Consent Decree. Defendants explained this ambiguity—and Fodse and Lutte's error—in their response to the Government's motion to enforce. *See* ECF 317 at 16-19, 23-25. In sum, the map attached to the Consent Decree was incorrect in many respects, as confirmed by Fodse and Lutte. The result of which was the false authorization by the Government to conduct the actions at issue, the reversal of that authorization, and this enforcement action. Such ambiguity not only warrants vacatur of the consent decree, but also denial of the Government's Motion to Enforce.

C. **Defendants' Flooding Arguments Are Not Precluded and, Regardless, the Government Misses the Defendants' Point on Flooding.**

In two sections of its brief—both addressing flooding—the Government attempts to rely on various theories of estoppel to argue that the Defendants arguments are precluded at this juncture from raising those issues. But on both points the Government is mistaken and, in general, misses the point of the Defendants' flooding arguments.

As an initial matter, the Government fails to fully understand Defendants' point on flooding. To summarize: As the Government has acknowledged (through Lapp's testimony at the Court of Claims proceeding), the purpose of the Consent Decree was to restore the conditions

of the site to those present in 1984.  Defendants' point is that since the entry of the Consent

Decree, the site flooded *beyond* what was the case in 1984, for multiple reasons, including the

overbreadth of the restoration plan and the existence of beaver dams.  This presents an

unforeseen change in the factual circumstances the requires vacatur of the Consent Decree.  The

Government responds that any claim of flooding is baseless because the site is a wetland.  But

the Government ignores Defendants' point, which is that the *extent* of flooding/wetlands is

problematic, because it exceeds the hydrological nature of the site as of 1984.  As a result of this

misunderstanding, the Government's responses to the Defendants' flooding arguments are off

base and, more specifically, the Government's estoppel points miss the mark.

First, the Government argues that the Court of Claims holding bars Defendants from

raising "in this case any alleged flooding prior to that earlier litigation under the doctrines of

collateral estoppel."  *See* ECF No. 318 at 17.  But the Court of Claims decision addressed

flooding on areas outside the Consent Decree area as part of a takings case, and the Defendants'

point here is that the flooding within the consent decree exceeds what was contemplated by the

Consent Decree and restoration plan.  In other words, the Court of Claims issue addresses a point

distinct from the one made by Defendants' here.  The Court of Claims did not hold—and

therefore Defendants are not barred from arguing—that flooding has occurred within the Consent

Decree boundaries beyond that which was called for in the Consent Decree.  Furthermore, the

Court of Claims decision further *corroborates* Defendants' position on flooding, by (a) not

disputing that flooding took place on the properties and (b) acknowledging that the flooding was

at least related to the issue of beaver dams, as Defendants explained in their opening brief.  The

overbreadth of the Consent Decree, combined with the beaver dams, created flooding beyond

that called for in the Consent Decree and Restoration Plan.  This is cause for vacatur of the Consent Decree.

Second, the Government argues that Defendants' current argument that the Consent Decree was "dry" at the time of the violations is barred by the doctrine of judicial estoppel.  *See* ECF No. 318 at 49.  Again, not so.  Critically, the Government *misquotes* Defendants.  On the cited page (ECF No. 314 at 19), Defendants argue that the Murphy tract was "mostly dry" from 1979 to 1993, and not that was "dry."  Omitting "mostly" from Defendants' argument is vital, given that "mostly" implies some level of wetness—which "dry" does not—and thus the site could be "mostly dry" and still "wetlands" as set forth in the stipulation.  As a result, the Government is flat wrong that Defendants' argument is barred under the doctrine of judicial estoppel based on its prior stipulation regarding wetlands.  This is an important point in light of the Defendants' argument is that the site has been flooded and must be returned to its pre-Consent Decree condition (which is "mostly dry").  It also bears mentioning that the Court of Claims itself acknowledged that the site was dry in 1979—as Defendants' quoted in their initial brief.  So if the Government claims the Court of Claims decision is binding on issues addressed in that case under the doctrine of collateral estoppel, then that decision is also binding as to the condition of the site prior to the Consent Decree.  The Government cannot have it both ways.

The Government's erroneous attempts to invoke various estoppel theories to reject the Defendants' arguments on flooding distract from the unmistakable, well-supported, and important point by Defendants on flooding—that is, that the Consent Decree, on its own or in conjunction with outside forces (beavers) resulted in flooding beyond what the Consent Decree was designed to do.  This presents a significant, unforeseen change of circumstances warranting vacatur of the Consent Decree.

## CONCLUSION

For all the reasons set forth in Defendants' 60(b)(5) Motion to Vacate Consent Decree, Defendants' memorandum of law in support of that motion, and this reply brief, Defendants respectfully request that this Court grant Defendants' motion and vacate the Consent Decree.

Respectfully submitted,

By: */s/ Neal R. Devlin*

Neal R. Devlin, Esq. (PA ID No. 89223)
Alexander K. Cox, Esq. (PA ID No. 322065)
120 West Tenth Street
Erie, Pennsylvania 16501-1461
Telephone (814) 459-2800
Fax: (814) 453-4530
Email: ndevlin@kmgslaw.com

# 2198936.v1